UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE D. JOHNSON, | No. 2:17-cv-1310 JAM KJN P |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| J. SALAZAR, | |
| Respondent. | |

I. Introduction

Petitioner is a federal prisoner, proceeding without counsel. Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming that he is actually innocent as a matter of law, based on new federal regulatory law. (ECF No. 1 at 6-7, 10.) Petitioner contends that the government was required to obtain a court order prior to conducting the criminal investigation of petitioner. (ECF No. 1 at 14.) Respondent's motion to dismiss for lack of subject matter jurisdiction is before the court. As set forth more fully below, the motion to dismiss should be granted, and the petition dismissed without prejudice.

II. Background

On May 4, 2010, a superseding indictment was issued by the Grand Jury in United States v. Johnson, Case No. CR 09-5703 RBL (W.D. Wash.). (ECF No. 12-1 at 2-29.) Along with his mother, petitioner was charged with 35 counts of health care fraud, 10 counts relating to filing a

1

false income tax return, and 13 counts of illegal distribution of controlled substances. (Id.) On June 24, 2010, counsel for petitioner filed a motion to dismiss the superseding indictment. (ECF No. 12-1 at 31-38.) The reply was filed on July 22, 2010, along with a motion to suppress under 42 CFR 2.1 (3) and 18 U.S.C. § 2510. (ECF No. 12-1 at 40-45.)

Following an evidentiary hearing in Case No. CR 09-5703 RBL, on June 21, 2011, the district court issued an order rendering factual findings and denying various motions. Specifically, the district court found:

> While Dr. Johnson was listed as a physician certified to provide Buprenorphine treatment, the Court finds that this alone is insufficient to find that Dr. Johnson held himself out as providing substance abuse services. Dr. Johnson was not listed as a substance abuse treatment program by the United States Department of Health and Human Services. Dkt. #130 (Hinckley Decl.) ¶16, Ex. B at 21. There were no visible signs referring to drug and alcohol abuse programs or counseling at Dr. Johnson's clinics.[fn 4] Id. ¶¶12, 14; Dkt. #133 (Lynch Decl.) ¶¶2, 3, 16. Rather, the clinics were identified as family practice clinics. Id. According to the Washington State Department of Health's Medical Quality Assurance Commission, Dr. Johnson was designated as a Family Practice Medical Doctor. Dkt. #107-2 (Portillo Affidavit) ¶6. There is no evidence that Dr. Johnson advertised or marketed himself as a substance abuse treatment program. Rather, the evidence suggests that the substance abuse patients treated by Dr. Johnson were current patients who had tested "dirty" in Ameritox urinalysis screenings. Dkt. #130 (Hinckley Decl.) ¶13. During oral argument, the government conceded that, with respect to the 86 patients, Dr. Johnson was a treatment program. However, the evidence presented to the Court demonstrates that Dr. Johnson did not hold himself out as a substance abuse treatment program, despite the fact that he actually treated 86 patients.
>
> [FN 4: During the evidentiary hearing, Agents Lynch and Hinckley testified that they did not see any signs or brochures referring to substance abuse treatment programs, but that there were areas of the clinics they did not see. Nevertheless, defendants have not offered any evidence that there were signs or brochures in any of the clinics referring to substance abuse treatment programs.]

(ECF No. 12-1 at 52-53.)

The court concluded that petitioner did not hold himself out as a substance abuse treatment program under 42 C.F.R. § 2.11. (ECF No. 12-1 at 53.) The court also found that "Agents Hinckley and Lynch did not 'enroll' in a substance abuse treatment program, and therefore do not come within the meaning of 'undercover agent' for purposes of the regulations."

2

(ECF No. 12-1 at 53.) Thus, the court found that "the government did not need a court order prior to beginning their undercover investigation, including using audio and video surveillance, and the government properly obtained a search warrant to seize the patient records." (Id., citing see 42 C.F.R. § 2.67.) The court denied petitioner's motion to dismiss the indictment under Fed. R. Crim. P. 12(b)(3)(c) and 18 U.S.C. § 3504, and the motion to suppress evidence under 42 C.F.R. § 2.1. (ECF No. 12-1 at 53.)

On November 10, 2011, a jury convicted petitioner on 57 out of 58 counts in Case No. CR 09-5703 RBL. He was acquitted of count five, health care fraud for a claim for non-billable services to Medicaid for patient R.L. for approximate date of service May 22, 2008. (ECF No. 12-1 at 63-70.)

On January 10, 2012, petitioner filed in Case No. CR 09-5703 RBL, pro se motions to vacate the conviction and to dismiss the superseding indictment for lack of subject matter jurisdiction, renewing his claim that the government was required to obtain a court order to investigate and prosecute him. (ECF No. 12-1 at 72-83.) On February 2, 2012, the court denied the motions, noting that "[t]hese motions are recycled," and "[n]o new information is presented." (ECF No. 12-1 at 85.)

Petitioner filed an appeal in the Court of Appeals for the Ninth Circuit. In his appellate brief and his reply brief, petitioner again argued, *inter alia*, that the criminal investigation was void under 42 C.F.R. § 2.66 because the government failed to obtain a substance abuse treatment court order prior to the undercover investigation, and challenged the definition of "program," as applied by the district court. (ECF No. 12-1 at 87-106.)

On September 10, 2013, the Ninth Circuit affirmed the district court's ruling. United States v. Johnson, 540 F. App'x 573 (9th Cir. 2013). In addressing petitioner's appeal, the Ninth Circuit stated:

> Even were we to consider the waiver notification form, it would not convince us that the district court erred in concluding that Dr. Johnson was not a drug abuse treatment program. A drug abuse treatment program is an individual or entity that not only provides drug abuse treatment, but also "holds itself out as providing" treatment. See 42 C.F.R. § 2.11. The district court's conclusion was based on a finding that Dr. Johnson did not hold himself out as

3

> providing drug abuse treatment, which we review for clear error. United States v. Hinojosa-Perez, 206 F.3d 832, 835 (9th Cir. 2000). Even had the district court considered the evidence at issue, which according to Dr. Johnson shows that he consented to be listed on a registry of doctors certified to provide a particular type of drug abuse treatment, this evidence does not make the district court's finding "illogical, implausible, or without support in the record." In re Retz, 606 F.3d 1189, 1196 (9th Cir. 2010). Taken together, the evidence in the record supported a finding that he did not advertise or market himself as a drug abuse treatment program, instead only providing treatment to current patients that tested positive for drug use.

United States v. Johnson, 540 F. App'x at 577.

On December 29, 2014, petitioner filed a motion to vacate, set aside or correct sentence in the Western District of Washington, Case No. CR 09-5703 RBL. (ECF No. 12-1 at 108-70.) The district court found that petitioner primarily claimed that he was the victim of ineffective assistance of counsel, and that the government violated Brady by allegedly suppressing publicly available documents petitioner believed were favorable to his case. (ECF No. 12-1 at 173-74.) The district court articulated petitioner's grounds for relief as follows:

> (1) Johnson alleges that the District Court imposed a sentence without subject matter jurisdiction;
>
> (2) The government violated his Fifth and Fourteenth Amendment due process rights by failing to disclose evidence allegedly favorable to Johnson under Brady;
>
> (3) Ness provided constitutionally ineffective assistance of counsel, by performing poorly at the evidentiary hearing, and failing to gather necessary evidence; and
>
> (4) He is actually innocent.

(ECF No. 12-1 at 174.)

On June 11, 2015, the district court denied the § 2255 motion, finding that the court had subject matter jurisdiction over the case. (ECF No. 12-1 at 171-80.) The court found that petitioner failed to raise his Brady claims on appeal and therefore could only raise them if he demonstrated "cause and actual prejudice" for such failure, which he did not. (ECF No. 12-1 at 175.) Moreover, because the court had already affirmed that a substance abuse treatment order was not required prior to investigating petitioner, and petitioner "had a full and fair opportunity to

4

litigate this issue before the Ninth Circuit," petitioner was "procedurally barred from using this claim as a basis for a subsequent § 2255 motion."[1] (ECF No. 12-1 at 176.) The court also found that petitioner did not actually claim he is innocent of the crimes for which he was convicted, but rather claimed he could "demonstrate newly discovered evidence of material import that shows alleged trial errors reaching constitutional dimensions *probably* resulted in the conviction of one who is actually innocent." (ECF No. 12-1 at 179, quoting petitioner.) The court found such evidence "relates, again, to the claim that [petitioner] 'held himself out' as a substance abuse treatment facility, which the Ninth Circuit has already addressed. This is not a claim of actual innocence, and [petitioner] is procedurally barred from re-litigating it." (ECF No. 12-1 at 179-80.) The district court declined to issue a certificate of appealability.

On June 26, 2017, petitioner filed the instant petition under 28 U.S.C. § 2241. Petitioner alleges actual innocence, and again claims that he should be considered a substance abuse treatment program. (ECF No. 1 at 13-14.) He argues that because there were recent changes to the federal regulations, he is actually innocent as a matter of law, and contends that such changes apply retroactively to his case. (ECF No. 1 at 12-13.)

III. Motion to Dismiss

A party may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Federal Rule of [Civil] Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001) (abrogation on other grounds by Hertz Corp. v. Friend, 559 U.S. 77 1029 (2010)). "'Unless the

---

[1] The court also found that the DEA controlled substance registration certificate, dated November 2005, was not suppressed evidence because it belonged to petitioner and was in a basket of papers in his home, and was not posted in his office or used to advertise that his clinic was a substance abuse treatment facility. (ECF No. 12-1 at 176.) Moreover, the other various documents petitioner claimed were suppressed were actually publicly available documents which are not Brady material. (ECF No. 12-1 at 177.) The court also found that counsel's performance was not deficient, and petitioner was not constructively denied counsel during the pretrial criminal proceedings. (ECF No. 12-1 at 178-79.) The trial judge was the same judge who ruled on the § 2255 motion. The certificate was found in his home sometime in 2014, long after petitioner was sentenced in 2012.

5

jurisdictional issue is inextricable from the merits of a case, the court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1)[.]'" Robinson v. U.S., 586 F.3d 683, 685 (9th Cir. 2009) (internal citations omitted). If the court determines at any time that it lacks subject matter jurisdiction "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

IV. Determining § 2241 Jurisdiction

    A. General Standards

A federal court may not consider a habeas action over which it has no jurisdiction. Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir. 2000). "[T]o determine whether jurisdiction is proper, a court must first determine whether a habeas petition is filed pursuant to § 2241 or § 2255 before proceeding to any other issue." Hernandez, 204 F.3d at 865.

A federal prisoner may challenge the manner, location, or conditions of a sentence's execution by filing a petition pursuant to § 2241 in the "custodial court," that is, the court of the district in which he is incarcerated. Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir. 2006); Hernandez, 204 F.3d at 864-65. If the prisoner challenges the legality of his conviction or sentence as Petitioner does here, however, a motion under 28 U.S.C. § 2255, filed in the court of conviction, is the exclusive means by which he may test the legality of his detention. Stephens, 464 F.3d at 897; Tripati v. Henman, 843 F.2d 1160, 1161-62 (9th Cir. 1988). Generally, a prisoner may not collaterally attack a federal conviction or sentence by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the custodial court, as petitioner seeks to do in this case. Tripati, 843 F.2d at 1162.

    B. The "Escape Hatch"

An exception to the general rule, commonly referred to as the "escape hatch" or the "savings clause," "permits a federal prisoner to file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is inadequate or ineffective to test the legality of his detention." Stephens, 464 F.3d at 897 (citations and internal quotations omitted); see also 28 U.S.C. § 2255; Harrison v. Ollison, 519 F.3d 952, 956 (9th Cir. 2008) ("If the prisoner's claims qualify for the escape hatch of § 2255, the prisoner may challenge the legality of a sentence through a § 2241 petition in the custodial court"); Hernandez, 204 F.3d at

864-65. The exception is very narrow. <u>Ivy v. Pontesso</u>, 328 F.3d 1057, 1059 (9th Cir. 2003). "[A] prisoner may file a § 2241 petition under the escape hatch when the prisoner (1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim." <u>Marrero v. Ives</u>, 682 F.3d 1190, 1192 (9th Cir. 2012) (internal quotations omitted).

"The general rule in this circuit is that the ban on unauthorized second or successive petitions does not per se make § 2255 'inadequate or ineffective.'" <u>Lorentsen v. Hood</u>, 223 F.3d 950, 953 (9th Cir. 2000) (quoting 28 U.S.C. § 2255). The remedy under § 2255 usually will not be deemed inadequate or ineffective merely because a prior § 2255 motion was denied or because a remedy under § 2255 is procedurally barred. <u>See</u> <u>Aronson v. May</u>, 85 S. Ct. 3, 5 (1964) (denial of a prior § 2255 motion is insufficient to render § 2255 inadequate). The burden is on the petitioner to show that the remedy is inadequate or ineffective. <u>Redfield v. United States</u>, 315 F.2d 76, 83 (9th Cir. 1963).

In this case, petitioner challenges the validity and constitutionality of the sentence imposed by the Western District of Washington rather than the administration of his sentence at FCI-Herlong, proper procedure required him to file a motion pursuant to § 2255 in the Western District of Washington rather than a petition pursuant to § 2241 in this court. Because petitioner has previously filed a § 2255 motion, he must first secure authorization from the Ninth Circuit to file a second or successive § 2255 motion. To proceed with the instant § 2241 petition in this court, petitioner bears the burden of establishing that a § 2255 motion is an inadequate or ineffective remedy.

V. <u>Analysis</u>

    A. <u>Actual Innocence?</u>

Petitioner brings a freestanding claim of actual innocence, arguing that the changed federal regulations demonstrate that he is actually innocent as a matter of law. (ECF No. 1 at 10.)

In the Ninth Circuit, a claim of actual innocence for purposes of the § 2255 savings clause is tested using the standard articulated by the U.S. Supreme Court in <u>Bousley v. United States</u>, 523 U.S. 614 (1998). <u>Stephens</u>, 464 U.S. at 898.

////

"To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal quotation marks omitted). Such showing requires that the petitioner make a showing of factual innocence, "not mere legal insufficiency." Bousley, 523 U.S. at 623. In other words, the exception concerns "actual as opposed to legal innocence." Sawyer v. Whitley, 505 U.S. 333, 339 (1992). The actual innocence requirement is not satisfied when a petitioner merely asserts that he was factually innocent of his crimes of conviction but does not introduce "evidence tending to show that he did not commit the [acts] underlying his convictions." Marrero, 682 F.3d at 1192. The petitioner bears the burden of proof. Lorentsen, 223 F.3d at 954. When a prisoner cannot establish actual innocence, the claim must proceed under § 2255.

"A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." Sawyer, 505 U.S. at 340. Although such claims are regularly made after conviction in both state and federal courts, they are "quite regularly denied because the evidence adduced in support of them fails to meet the rigorous standards for granting such motions." Id. Only in rare instances, such as when another person has confessed to the crime, is it "evident that the law has made a mistake." Id.

Here, as argued by respondent, petitioner's claim does not demonstrate that petitioner is factually innocent of health care fraud, filing false tax returns, and illegally distributing controlled substances. Petitioner is required to make a factual showing that he did not engage in such illegal activities. Bousley, 523 U.S. at 623, quoting Schlup, 513 U.S. at 327-28 ("To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.") Petitioner's reliance on a change in the federal regulations is an argument solely based on legal insufficiency -- arguing that the government's undercover operations were improper. But such claim is not based on factual innocence. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623-24, citing see Sawyer v. Whitley, 505 U.S. 333, 339 (1992). Petitioner has failed to demonstrate his factual innocence.

B. Unobstructed Procedural Shot?

But even assuming petitioner could establish his factual innocence, he cannot demonstrate that he has not had an unobstructed procedural shot at presenting this claim.

To determine whether a petitioner has had an unobstructed shot at pursuing a claim, the court must consider (1) whether the claim's legal basis arose after petitioner had exhausted his direct appeal and first § 2255 motion, and (2) whether the law changed in any way relevant to the claim after the § 2255 motion. Alaimalo v. United States, 645 F.3d 1042, 1047 (9th Cir. 2011). An intervening court decision does not establish that a petitioner failed to have an unobstructed procedural shot at a claim unless it "effect[s] a material change in applicable law." Harrison, 519 F.3d at 960.

When a § 2241 petitioner previously raised the same claim in a § 2255 motion, he has "had an unobstructed procedural shot to pursue his claim." Harrison, 519 F.3d at 961. "[I]t is not enough that petitioner is presently barred from raising his claim of innocence by motion under § 2255. He must never have had the opportunity to raise it by motion." Ivy, 328 F.3d at 1060. "In determining whether a petitioner had an unobstructed shot to pursue his claim, the court must ask whether petitioner's claim 'did not become available' until after a federal court decision." Harrison, 519 F.3d at 960. "In other words, we consider: (1) whether the legal basis for petitioner's claim 'did not arise until after he had exhausted his direct appeal and first § 2255 motion; and (2) whether the law changed 'in any way relevant' to petitioner's claim after that first § 2255 motion." Id.

Here, the record reflects that petitioner has consistently argued that he was a substance abuse treatment program, and that the government was required to obtain a court order before beginning their undercover operations. Petitioner raised such challenges in a pretrial motion to dismiss/motion to suppress, on appeal, and again in his initial § 2255 motion brought in the Western District of Washington. Thus, petitioner had an unobstructed procedural shot at raising his arguments in the district of conviction. In addition, petitioner's earlier challenges have been based on 42 C.F.R. § 2.67. (ECF No. 12-1 at 32, 33, 35, 41, 45.) Section 2.67 was in effect during petitioner's direct appeal, and his initial § 2255 motion. There have been no material

changes to 42 C.F.R. § 2.67 since that time. Because petitioner has had a full and fair opportunity to raise his claim, he should not be permitted to raise it again through a § 2241 petition in a different court. See Ivy v. Pontesso, 328 F.3d 1057 (9th Cir. 2003) (petitioner "must never have had the opportunity to raise [his claim of actual innocence] by motion.")

Moreover, petitioner's reliance on the changes to 42 C.F.R. § 2.11 are unavailing because they do not constitute an intervening change in the law relevant to petitioner's claim. The Substance Abuse Mental Health Services Administration ("SAMSHA") is a section of the U.S. Department of Health and Human Services, and oversees the federal regulations at issue in this case. SAMSHA explained that the replacement of the terms "alcohol and drug abuse" to "substance use disorder" in § 2.11 were proposed to address inconsistent usage and to consolidate definitions. Confidentiality of Substance Use Disorder Patient Records, 81 Fed. Reg. 6988-01, 2016 WL 469576 at *6994 (Feb. 9, 2016). The proposed modifications to the definition of "Part 2 Program" were to address the lack of a definition for the term "Part 2 Program," as well as the interchangeable use of the terms "Program" and "federally assisted alcohol or drug abuse program." Id. SAMHSA proposed to define a "Part 2 Program" as a federally assisted program (federally assisted as defined in § 2.12(b), and program as defined in § 2.11). 2016 WL 469576 at *6994.

In addition, the proposed changes to the definition of "program" were to consistently use the term "general medical facility," rather than the terms "general medical care facility" and "general medical facility." Id. at 6995. To address situations where more substance use disorder treatment services were occurring in general health care and integrated care settings not typically covered under the current regulations, SAMHSA proposed revising the definition to make clear that the definition of program would include such situations. The proposed modified language was:

> 1. If a provider is not a general medical facility or general medical practice, then the provider meets the part 2 definition of a "Program" if it is an individual or entity who holds itself out as providing, and provides substance use disorder diagnosis, treatment, or referral for treatment.

////

> 2. If the provider is an identified unit within a general medical facility or general medical practice, it is a "Program" if it holds itself out as providing, and provides, substance use disorder diagnosis, treatment or referral for treatment.
>
> 3. If the provider consists of medical personnel or other staff in a general medical facility or general medical practice, it is a "Program" if its primary function is the provision of substance use disorder diagnosis, treatment, or referral for treatment and is identified as such specialized medical personnel or other staff by the general medical facility or general medical practice.

2016 WL 469576 at *6995.

In the final rule, SAMHSA adopted the terminology "substance use disorder" and the definition of "Part 2 program" as federally assisted (as defined at 2.12(b)) program (as defined at § 2.11). 82 Fed. Reg. 6052-01, 2017 WL 168822 at *6062 (Jan. 18, 2017). However, SAMHSA declined to finalize proposed changes to the definition of "program,"

> but did make minor updates to the terminology in the text. We are, however, finalizing certain other minor changes to the proposed definition to update terminology so that it is consistent with current best practice.
>
> First, SAMHSA moved the reference to examples from the definition of "Program" to the definition of "Part 2 program."
>
> Second, we retain the language changes from drug and/or alcohol abuse to substance use disorder.
>
> Finally, as stated in the NPRM, SAMHSA clarifies that paragraph (1) of the definition of "Program" would not apply to "general medical facilities". However, paragraphs (2) and (3) of the definition of "Program" would apply to "general medical facilities."

2017 WL 168822 at *6065. Thus, the minor updates were introduced as "consistent with the definition of a "program," and read as follows:

> 1. If a provider is not a general medical care facility, then the provider meets the part 2 definition of a "Program" if it is an individual or entity who holds itself out as providing, and provides substance use disorder diagnosis, treatment, or referral for treatment.
>
> 2. If the provider is an identified unit within a general medical facility, it is a "Program" if it holds itself out as providing, and provides, substance use disorder diagnosis, treatment, or referral for treatment.
>
> 3. If the provider consists of medical personnel or other staff in a general medical facility, it is a "Program" if its primary function is

11

> the provision of substance use disorder diagnosis, treatment, or referral for treatment and is identified as such specialized medical personnel or other staff by the general medical facility.

2017 WL 168822 at *6065.

> SAMHSA also clarifies that the program definition does not categorically exclude buprenorphine providers. However, holding a waiver to prescribe buprenorphine or holding a waiver and prescribing buprenorphine as part of primary care practice also does not lead to categorical inclusion of providers in the definition of a part 2 program; such determinations are fact-specific. Also, a health care provider that does not otherwise meet the definition of a part 2 program would not become a program simply because they provided screening, brief intervention, and/or referral to treatment within the context of general health care.

2017 WL 168822 at *6066. SAMHSA reiterated the meaning of "holds itself out" as consistent with previously published FAQ guidance. 2017 WL 168822 at *6066.

Petitioner argues that the above-described modifications were a "substantial revision of the term 'program.'" (ECF No. 14 at 2.) But having reviewed the minor changes to the applicable sections, this court cannot find that such modifications were substantive or relevant to petitioner's instant claim. Here, the focus of the trial court in this case was whether petitioner's family medical practice was a substance abuse treatment program. The changes made by SAMHSA were minor, primarily to make the terminology consistent; indeed, SAMHSA avoided making changes to the definition of "program" to avoid confusion. Therefore, such changes do not demonstrate that the legal basis for petitioner's claim arose after denial of his first § 2255 motion or that the law changed in any way relevant to the claim after such denial.

Petitioner's reliance on <u>Alaimalo</u> is unavailing because in <u>Alaimalo</u>, the prisoner demonstrated he was actually innocent because he was convicted of importing methamphetamine from California to Guam, which the Ninth Circuit subsequently held was not a crime in <u>United States v. Cabaccang</u>, 332 F.3d 622 (9th Cir. 2003), and such intervening court decision effected a material change in the applicable law. <u>Alaimalo</u>, 645 F.3d at 1047-48. Here, the minor textual changes relied on by petitioner do not constitute such an intervening or material change in applicable law.

////

12

C. Conclusion

Because the escape hatch requires petitioner to satisfy both his actual innocence and his lack of an unobstructed procedural shot at presenting his claims, this court lacks subject matter jurisdiction to hear petitioner's challenge to the validity of his underlying conviction under 28 U.S.C. § 2241.

VI. Transfer?

A court lacking jurisdiction of a civil action may transfer the action to a court in which the action could have been brought, provided the transfer is "in the interest of justice." 28 U.S.C. § 1631; see Cruz-Aguilera v. I.N.S., 245 F.3d 1070, 1074 (9th Cir. 2001) (an action should be transferred if "(1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice.") .

The undersigned declines to recommend transfer of this petition to the Western District of Washington because petitioner previously filed a § 2255 motion in the Western District; he must first seek leave from the Court of Appeals for the Ninth Circuit if he wishes to file a second or successive § 2255 motion in the Western District.

VII. Recommendations

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 12) be granted; and

2. This action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The

////

////

13

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 15, 2017

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

john1310.mtd.2241